IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

                                                                                                Cr. No. 01-284 MV

RICARDO AGUIRRE-TELLO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss the Indictment, filed July 31, 2001 **[Doc. No. 40]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED**.

## BACKGROUND

Defendant Ricardo Aguirre-Tello has been charged with unlawful reentry into the United States after having been deported on August 19, 1994, due to a prior conviction of an aggravated felony. According to the record before the Court, at the time of the deportation, Defendant was a legal permanent resident who had resided in the United States for approximately seven continuous years. Defendant moves the Court to dismiss the indictment for the reentry charge because the underlying deportation resulted from an allegedly unconstitutional deportation hearing.

Specifically, Defendant argues that the immigration judge ("IJ") at the deportation hearing did not properly advise him of his eligibility for discretionary relief and bond, and that he did not receive a list of free legal services, thus causing his deportation hearing to be fundamentally unfair and prejudicial. After reviewing written submissions by both parties, the Court heard oral arguments on the motion on November 20, 2001.

**STANDARDS**

Federal immigration law forbids, in pertinent part, "any alien who has been . . . deported, or removed or has departed the United States while an order of . . . deportation, or removal is outstanding" from entering, attempting to enter, or being found in the United States without prior approval from the Attorney General. 8 U.S.C. § 1326(a) (1999). However, in United States v. Mendoza-Lopez ("Mendoza-Lopez I"), the U.S. Supreme Court held that the U.S. Constitution imposed due process limitations on deportation proceedings that subsequently support a charge of unlawful reentry. 481 U.S. 828, 837 (1987). Because a criminal sanction is at stake, the Court emphasized the need for "some meaningful review of the administrative proceeding," which "requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." Id. at 838–39. The Mendoza-Lopez I Court did not specify what would constitute a due process violation in a deportation proceeding because the government conceded that such a violation had occurred. Id. at 839.

The Tenth Circuit has interpreted Mendoza-Lopez I to allow a defendant to collaterally challenge a deportation hearing if "the defendant can show that the deportation hearing was

fundamentally unfair and deprived the alien of the right to judicial review. . . . In order to establish fundamental unfairness, the alien must show that he was prejudiced." United States v. Meraz-Valeta, 26 F.3d 992, 998 (10th Cir. 1994). Moreover, the defendant must "show that if he had been appropriately informed of his right to appeal, the outcome of his case would have been different." Id. at 998. "[T]he burden of proof in a collateral attack on a deportation order is on a defendant based on the presumption of regularity that attaches to a final deportation order." United States v. Arevalo-Tavares, 210 F.3d 1199, 1200 (10th Cir. 2000).

**DISCUSSION**

Defendant argues that his deportation proceeding was constitutionally infirm because the IJ did not adequately explain to him his eligibility for a waiver under Section 212(c) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(c) (repealed by Pub. L. 104-208, Sept. 30, 1996).[1] Defendant also contends that the IJ's failure to advise him of his right to bond, which had already been set at $20,000, and to give him a list of free legal services provides additional bases to find a due process violation. The Court is persuaded by Defendant's arguments and finds that he has met his burden in refuting the "presumption of regularity" attached to his deportation order. See Arevalo-Tavares, 210 F.3d at 1200. The deportation hearing was fundamentally unfair and deprived Defendant of his right to judicial review; thus, the indictment for unlawful

---

[1]This provision was repealed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). However, because Defendant was deported in 1994 prior to AEDPA's effective date, the 212(c) waiver would have been available to him at the time of his deportation proceeding.

reentry, which is based on Defendant's prior deportation, must be dismissed.[2]

**I.     Fundamental Unfairness**

    A.     <u>Discretionary Relief</u>

Section 212(c) states, in pertinent part, that "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . ." 8 U.S.C. § 1182(c). Although the language of the statute refers to persons who temporarily leave the United States, federal courts and the Immigration and Naturalization Service ("INS") have ruled that the waiver is equally applicable to permanent residents who have never left. See <u>INS v. St. Cyr</u>, 121 S. Ct. 2271, 2276 (2001); <u>Matter of Silva</u>, 16 I. &. N. Dec. 26, 1976 WL 32326 (Sept. 10, 1976).

The record indicates that Defendant attained permanent legal resident status on August 20, 1987; thus, Defendant would have been eligible for a 212(c) waiver the day following

---

[2]Neither Defendant nor the government has raised the fact that Congress codified the <u>Mendoza-Lopez I</u> decision with an additional requirement to exhaust available administrative remedies. See 8 U.S.C. § 1326(d) (1999). The Tenth Circuit has held that Section 1326(d) "comports with the constitutional standard for due process set forth in [<u>Mendoza-Lopez I</u>]," <u>United States v. Wittgenstein</u>, 163 F.3d 1164, 1170 (10th Cir. 1998), although it has not had the opportunity to rule whether a failure to exhaust administrative remedies would necessarily bar a collateral challenge of an <u>unconstitutional</u> deportation order. At least one appellate court has held that the "exhaustion requirement of 8 U.S.C. § 1326(d) cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process." <u>United States v. Muro-Inclan</u>, 249 F.3d 1180, 1183 (9th Cir. 2001). In any event, the Court does not find Section 1326(d) to bar Defendant's collateral challenge because (1) his motion is based on constitutional grounds irrespective of federal statutes, (2) the government never raised this issue before the Court, (3) there are no administrative remedies that are currently available to Defendant to challenge the prior deportation and the current reentry charge, and (4) the due process violations in his deportation proceeding prevented Defendant from exhausting his administrative appeals at the time of his deportation.

his deportation hearing, which took place on August 19, 1994. The government has not disputed Defendant's eligibility for the waiver; in fact, the IJ himself acknowledged Defendant's eligibility during the deportation proceeding upon review of Defendant's file.[3] Therefore, the issue before the Court is whether Defendant was properly advised of his eligibility for a waiver in order to satisfy due process.

Ninth Circuit law, which would have governed Defendant's deportation proceeding,[4] explicitly finds an IJ's failure to properly advise a deportee of discretionary relief to be a violation of due process, and the Court finds the Ninth Circuit's analysis to be persuasive. In United States v. Muro-Inclan, the Ninth Circuit held that "when the record before the Immigration Judge 'raises a reasonable possibility' of relief from deportation . . . , it is a denial of due process to fail to inform an alien of that possibility at the deportation hearing." 249 F.3d 1180, 1184 (9th Cit. 2001); see also United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000). This due process violation is directly linked to the duties imposed on an IJ by regulations promulgated by INS, which existed at the time of Defendant's deportation hearing. See Muro-Inclan, 249 F.3d at

---

[3]Section 212(c) also states that the waiver is not applicable "to any alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years." 8 U.S.C. § 1182(c). According to the record, Defendant was convicted for an aggravated felony on November 1, 1989, committed to a state penitentiary on November 15, 1989, and subsequently released on August 13, 1994, for a total of less than five years of imprisonment. While it appears Defendant was detained prior to sentencing, it is unclear how much time was spent in pre-trial detention and whether such detention counted towards his sentence. In light of the additional fact that the IJ did not consider, and the government does not currently consider, the five-year limit to bar Defendant's eligibility, the Court finds that Defendant's time served for the aggravated felony conviction falls within the requirements of Section 212(c).

[4]Defendant's residence in the United States has at all times been in the State of California, and his deportation hearing took place in El Centro, California.

1183.  Pursuant to INS regulations, an IJ is required to "inform the respondent [in a deportation hearing] of his apparent eligibility to apply for any of the benefits [of relief from deportation] enumerated in this paragraph and . . . afford him an opportunity to make application therefor during the hearing . . . ."  Moran-Enriquez v. INS, 884 F.2d 420, 422 (9th Cir. 1989) (quoting 8 C.F.R. § 242.17(a) (1988)).  Ninth Circuit law considers this duty to be mandatory.  Id.; accord Muro-Inclan, 249 F.3d at 1183; Arrieta, 224 F.3d at 1079.

The Tenth Circuit has not yet specifically ruled on the constitutional implications of an IJ's failure to advise a deportee of available discretionary relief, but the case law of this circuit is entirely consistent with the Ninth Circuit's analysis.  The Tenth Circuit has addressed this issue only once in United States v. Mendoza-Lopez ("Mendoza-Lopez II")[5], where they held that the "ILJ's duty to inform an alien of his apparent eligibility for discretionary relief from deportation is triggered only after the alien has provided information sufficient to support such a duty."  7 F.3d 1483, 1485 (10th Cir. 1993), impliedly overruled on other grounds by United States v. Fagan, 162 F.3d 1280 (10th Cir. 1998).  The Mendoza-Lopez II court did not find the IJ's failure to inform the deportee of his eligibility for discretionary relief to be fundamentally unfair because he had deliberately concealed relevant facts from the judge; therefore, "[a]ny prejudice [the defendant] may have suffered was the result of his willful misstatements to the ILJ."  Id. at 1486.

This case is distinguishable because the IJ clearly recognized Defendant's eligibility for discretionary relief and, in fact, stated so in the deportation hearing.  Consequently, he had a duty to inform Defendant that a 212(c) waiver of deportation was available pursuant to the Tenth Circuit's reasoning in Mendoza-Lopez II.  Yet, despite this clear obligation, the IJ merely

---

[5]This opinion is not related to the U.S. Supreme Court decision with the same case name.

informed Defendant that he would be eligible for a "pardon" the following day without further explaining what constituted a "pardon," the requirements for the relief, and the implications of receiving or not receiving such relief. The Court finds this advisement of discretionary relief to be wholly insufficient under INS regulatory guidelines, resulting in fundamental unfairness to Defendant.

Federal immigration law is intricate and confusing to trained attorneys, let alone a lay person with limited education. Therefore, merely informing a deportee that he or she is eligible for discretionary relief under Section 212(c), which this IJ did not even do, is often of little assistance. However, if an IJ engages the use of vernacular words, it is particularly troubling when the chosen words are even more misleading and confusing than the technical terms themselves. A "pardon" is commonly understood to be a rare act of forgiveness by an executive authority. See, e.g., Black's Law Dictionary 1113 (6th ed. 1990) (defining pardon as "[a]n executive action that mitigates or sets aside punishment for a crime. An act of grace from governing power that mitigates the punishment the law demands for the offense and restores the rights and privileges forfeited on account of the offense"). As a result, Defendant believed that he was eligible to apply for a "pardon," as opposed to a specific waiver of deportation explicitly authorized by statute.

There is a distinct difference between a pardon and a statutory waiver, and it is acutely unfair to expect a deportee to understand this difference without further information from the IJ. The Court notes that even counsel for the government conceded in oral argument that Defendant was not specifically advised of the 212(c) waiver and that the IJ's reference to Defendant's eligibility for a pardon in one more day was confusing. If counsel was unable to fully understand

the IJ's explanation of available discretionary relief, it is extremely unlikely that Defendant properly understood the full implications of declining to wait and apply for a 212(c) waiver.

Defendant was not a typical illegal immigrant subject to deportation, but was rather a legal permanent resident who had been lawfully residing in the United States for several years. It is for this reason that INS regulations place a duty on the IJ to inform deportees of available discretionary relief. The legal right to reside in the United States is at stake in these circumstances, and such a valued right should not be surrendered without full knowledge of the available relief at hand. Thus, due process cannot be satisfied by the mere mentioning of an available "pardon," but instead, requires the IJ to provide sufficient information whereby Defendant can have enough understanding of the rights he possessed in order to make an informed decision. To satisfy due process, the IJ only had to take a few minutes and explain the 212(c) waiver to Defendant so that he could adequately understand what his options were. Unfortunately for Defendant, and to his detriment, the IJ did not take those few minutes to comply with INS regulations and the U.S. Constitution, and subsequently violated Defendant's due process rights.

    B.    <u>Right to Counsel and Bond</u>

Although the IJ's failure to properly inform Defendant of his eligibility for discretionary relief alone constitutes a due process violation, the fact that Defendant did not receive a list of free legal services and was not advised of his eligibility for bond only further exacerbates the constitutional deficiencies of the deportation proceeding.

"[W]hile petitioners do not have a constitutional right to counsel in deportation proceedings, they are entitled to due process." <u>Nazakat v. INS</u>, 981 F.2d 1146, 1148 (10th Cir.

1992).  The Nazakat court did not consider a "petitioner's inability to obtain counsel" to constitute a violation of due process.  Id.  However, in that case, the IJ offered the deportee a list of free legal services.  Id. at 1148–49.  Indeed, at the time of Defendant's deportation, the IJ was required by INS regulation to "advise the [deportee] of the availability of free legal services programs . . .; [and] ascertain that the [deportee] has received a list of such programs . . . ."  8 C.F.R. § 242.16 (1990), quoted in United States v. Valdez, 917 F.2d 466, 468 (10th Cir. 1990).

Contrary to INS regulations, Defendant asserts that he did not receive a list of free legal services at his deportation proceeding and, thus, did not have the resources to seek legal advice about his eligibility for any available relief.  Not once during the deportation proceeding, either in a group or individually, did the IJ ascertain whether or not Defendant received the requisite list of free legal services.  Once again, the IJ failed to follow his clear obligations set forth in the INS regulations, resulting in a fundamentally unfair deportation proceeding.

Likewise, the IJ's failure to inform Defendant of his bond caused further due process violations.  The Tenth Circuit has not yet ruled whether an IJ commits constitutional error by not advising a deportee of his eligibility for bond.  Nevertheless, the Court finds this omission to be fundamentally unfair because it essentially deprived Defendant of an opportunity to be released from detention while pursuing potential avenues of relief.  Despite Defendant's obvious desire to be released from detention after serving a significant amount of time in prison, the IJ did not once inform Defendant of his bond.  This omission is particularly stark because the IJ specifically advised the deportees before and after Defendant about the possibility of bond, whereas Defendant had already been approved for bond and was not so informed.  This deficiency by the IJ provides yet another basis for finding the deportation proceeding fundamentally unfair.

**II.     Prejudice**

The Tenth Circuit has stated that prejudice, a necessary component of fundamental unfairness, requires the defendant to show "that if he had been appropriately informed of his right[s] . . . , the outcome of his case would have been different." Meraz-Valeta, 26 F.3d at 998 (citing United States v. Holland, 876 F.2d 1533, 1537 (11th Cir. 1989)).  However, the Tenth Circuit has not yet specified the standard upon which the Court may determine whether or not Defendant's case would have resulted differently.  In the specific context of discretionary relief, the Ninth Circuit has held that "to establish prejudice, [the defendant] does not have to show that he actually would have been granted relief.  Instead, he must only show that he had a 'plausible' ground for relief from deportation." Arrieta, 224 F.3d at 1079; accord Muro-Inclan, 249 F.3d at 1184.  Alternatively, the Fifth Circuit finds prejudice where "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." United States v. Encarnacion-Galvez, 964 F.2d 402, 407 (5th Cir. 1992).  Regardless, the Court holds that in this case, Defendant's immigration matter would have resulted differently had he been appropriately advised of his eligibility for discretionary relief, and, thus, he suffered undue prejudice regardless of the standard relied upon by the Court.

When determining whether or not a 212(c) waiver should be granted, the IJ must balance "the social and humane considerations presented in an alien's favor against the adverse factors evidencing his undesirability as a permanent resident." Matter of Edwards, 20 I. & N. Dec. 191, 1990 WL 385757, at *195 (May 2, 1990); see also Kahn v. INS, 36 F.3d 1412, 1413 (9th Cir. 1994); Yepes-Prado v. INS, 10 F.3d 1363, 1365–66 (9th Cir. 1993).  Favorable considerations include, inter alia, "family ties within the United States, residence of long duration in this country

(particularly when the inception of residence occurred at a young age), evidence of hardship on the respondent and his family if deportation occurs, . . ., proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character." Id. Examples of unfavorable considerations are "the nature and underlying circumstances of the . . . deportation ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country." Id. Moreover, "section 212(c) applications involving convicted aliens must be evaluated on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion." Id. at *196.

Upon review of the favorable and unfavorable considerations in Defendant's case, the Court believes that a 212(c) waiver would have been granted had Defendant applied for one at the time of his deportation proceeding. Defendant's sole adverse factor was his 1989 conviction for an aggravated felony. While the conviction is a serious consideration, Section 212(c) clearly contemplated waivers for convicted felons when sufficient favorable considerations were present. In Defendant's case, both of his parents resided in the United States as legal permanent residents, and although Defendant gained legal permeant residence in 1987, he had lived in the United States since the age of four. Consequently, the Court finds that Defendant had more than a "plausible ground" or a "reasonable likelihood" of relief under the Ninth and Fifth Circuit standards and, thus, would have had a different outcome had he been properly advised of a 212(c) waiver.

It is also noteworthy that the U.S. Supreme Court recently held that the statutory repeal of Section 212(c) did not apply retroactively to defendants who had pleaded guilty prior to the

repeal in reliance of the possibility that they might receive a discretionary waiver.  See INS v. St.

Cyr, 121 S. Ct. 2271 (2001).  The fact that the waiver was discretionary did not affect the Court's

analysis because "[t]here is a clear difference, for the purposes of retroactivity analysis, between

facing possible deportation and facing certain deportation."  Id. at 2293 (emphasis added).

Moreover, the Court explicitly recognized the large number of 212(c) waivers that had been

granted to legal permanent residents—as much as over half of the applications:

> [T]he class of aliens whose continued residence in this country has depended on
> their eligibility for § 212(c) relief is extremely large, and not surprisingly, a
> substantial percentage of their applications for § 212(c) relief have been granted.
> Consequently, in the period between 1989 and 1995 alone, § 212(c) relief was
> granted to over 10,000 aliens.

Id. at 2276–77 (citing Rannick, The Anti-Terrorism and Effective Death Penalty Act of 1996:  A

Death Sentence for the 212(c) Waiver, 28 Miami Inter-Am. L. Rev. 123, 150 n.80 (providing

statistics indicating that 51.5% of the applications for which a final decision was reached between

1989 and 1995 were granted); Mattis v. Reno, 212 F.3d 31, 33 (1st Cir. 2000) ("[I]n the years

immediately preceding the statute's passage, over half the applications were granted")).

      The Court also finds that Defendant was prejudiced by the IJ's failure to inform Defendant

of his right to bond and the availability of free legal services.  Had he known that bond was

available, Defendant could have posted bond and taken the time to seek some assistance for his

deportation proceeding outside of the detention center.  Yet, on the contrary, Defendant was not

given that option and faced the difficult choice of either (1) pursuing avenues of potential relief

while remaining in detention or (2) accepting deportation but being released from detention.

Likewise, had Defendant received the requisite list of free legal services, he could have been

advised by legal counsel about his eligibility for a 212(c) waiver; but again, the IJ denied

Defendant that opportunity by failing to comply with his regulatory obligations.

### III.    No Judicial Review

In order to collaterally challenge a deportation order, the constitutional violations in the deportation hearing must have deprived Defendant of judicial review. See Meraz-Valeta, 26 F.2d at 998. It is clear from the record that, during the deportation hearing, the IJ informed Defendant of his appeal rights, which Defendant subsequently waived. However, according to the U.S. Supreme Court, if Defendant's waiver of his appeal rights was not "considered or intelligent," he was "deprived of judicial review of [his] deportation proceeding." Mendoza-Lopez I, 481 U.S. at 840.

Similar to the IJ discussed in Mendoza-Lopez I, the IJ in this instance "permitted waivers of the right to appeal that were not the result of considered judgments by [Defendant], and failed to advise [Defendant] properly of [his] eligibility to apply for suspension of deportation." Id. Consequently, "[b]ecause [Defendant was] deprived of [his] rights to appeal, and of any basis to appeal since the only relief for which [he] would have been eligible was not adequately explained to [him], the deportation proceeding in which these events occurred may not be used to support a criminal conviction," and dismissal of the indictment would be proper. Id. at 842 (emphasis added). The Ninth Circuit has similarly held that a waiver of the right to appeal "is not considered and intelligent when the record contains an inference that the petitioner is eligible for relief from deportation, but the Immigration Judge fails to advise the alien of this possibility and give him the opportunity to develop the issue." Muro-Inclan, 249 F.3d at 1182 (quotations omitted).

## CONCLUSION

Following his release from imprisonment, Defendant had only one chance to fight for his right to remain in the United States as a legal permanent resident. However, due to the IJ's failure to adequately satisfy his obligations at the deportation proceeding, Defendant did not have the tools with which he could have made that fight. As a consequence, Defendant could not have made a "considered and intelligent" waiver of his appeal rights, and the Court has no choice but to declare the prior deportation, upon which the current indictment is based, to be unconstitutional.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Dismiss the Indictment **[Doc. No. 40]** is hereby **GRANTED**.

Dated this 22nd day of January, 2002.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
Peter S. Levitt

Attorneys for Defendant:
Felipe D.J. Millan
Herman Ortiz